

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00246-CR

JUAN ANTONIO SALINAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 33652B, Honorable Titiana Frausto, Presiding

July 21, 2026

MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, Juan Antonio Salinas, III, appeals from the judgment convicting him of the murder of Cecilia Rodriguez, the mother of his two young children.[1]  He was sentenced to life in prison and assessed a $10,000 fine.  In a single issue, Appellant argues the trial court erred by refusing his requested jury instruction on the lesser-included offense of criminally negligent homicide.  We affirm.

---

[1] *See* TEX. PENAL CODE § 19.02(c).

BACKGROUND

Around 2:24 a.m. on February 3, 2024, Appellant called 911 from the home he shared with Cecilia Rodriguez, his girlfriend of seven years and the mother of their three-year-old son and one-month-old daughter. He told the operator that he had accidentally shot Cecilia and that she was dead, then disconnected. When the operator successfully called back, Appellant gave a different account, saying Cecilia had shot herself and that he had not done it.

Earlier that night, Appellant had attended a comedy show, consumed alcohol, and smoked marijuana with a female friend. Cecilia had remained at home with the children. Roughly twenty minutes before the 911 call, Appellant returned to the residence. The two argued in the bedroom, where their three-year-old son and infant daughter were sleeping.

Responding officers found Appellant outside the residence in his underwear, holding the newborn, covered in blood, and on the phone with his mother. Inside the bedroom, Cecilia lay on the floor, and the three-year-old was found in a nearby toddler bed. A 9-millimeter Glock pistol lay on the floor, along with a spent cartridge casing and unspent ammunition. Blood was pooled beneath Cecilia and on one end of the bed. A fired projectile was recovered from the bed, and a bloodied hoodie and t-shirt with a bullet hole were located nearby.

The medical examiner testified that the fatal gunshot wound was in the jugular notch at the base of Cecilia's neck, that the projectile traveled in a downward direction through her left lung and heart, and that the absence of soot or stippling around the

2

entrance wound indicated the muzzle was at least two feet from Cecilia when the pistol was fired. Cecilia was dead before paramedics arrived.

At the police station, Appellant provided a recorded interview containing two materially different accounts. In the first, he insisted that Cecilia had grabbed the loaded pistol during the argument and shot herself, and that he had tried unsuccessfully to knock the gun from her hand. Confronted with physical evidence inconsistent with that version, Appellant offered a second account. He admitted taking the pistol during the argument, holding it in his right hand, and repeatedly "jolting" it in Cecilia's direction, demonstrating the motion on camera, until it "popped." He said he did not mean to fire, that the gun "just went off," and that he could not remember exactly what had happened.

Appellant also acknowledged his familiarity with the pistol. He had owned it for years, understood its operation, and knew the magazine held three or four live rounds. Because the chamber was initially empty, Appellant acknowledged that he would have had to rack the slide to load a round before the pistol would fire.

Before the charge conference, the trial court added manslaughter to the charge as a lesser-included offense. At the charge conference, Appellant requested that the court further instruct the jury on the lesser-included offense of criminally negligent homicide. The trial court denied the request; the submitted charge authorized the jury to convict Appellant of either murder or manslaughter. The jury found Appellant guilty of murder.

## ANALYSIS

In his sole issue, Appellant alleges that the trial court erred by failing to include a criminally negligent homicide instruction in the jury charge. We disagree.

3

We review a trial court's refusal to submit a requested lesser-included-offense instruction for abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023). The inquiry proceeds in two steps. First, we determine whether the requested offense is a lesser-included offense of the offense charged. *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023). Second, we ask whether the record contains affirmative evidence from which a rational jury could find that, if the defendant is guilty, he is guilty only of the lesser offense. *Chavez*, 666 S.W.3d at 776–77. That evidence must be directly germane to the lesser offense and must present it as a valid, rational alternative to the greater offense. *Id.* Mere disbelief of the State's evidence does not suffice. *Id.* at 777.

The parties do not dispute, and we agree that criminally negligent homicide is a lesser-included offense of murder because it differs from murder only in that a less culpable mental state suffices to establish its commission. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992); *Melton v. State*, 660 S.W.3d 199, 206 (Tex. App.—Austin 2022, pet. ref'd). The first prong is therefore satisfied.

The second prong turns on whether some evidence would allow a rational jury to conclude that Appellant failed to perceive the risk his conduct created, rather than perceived and consciously disregarded it. Because the record contains no such affirmative evidence, the trial court did not err in refusing the instruction.

Criminally negligent homicide involves inattentive risk creation. The actor "ought to be aware of the risk surrounding his conduct or the result thereof but fails to perceive the risk." *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005). Manslaughter, by contrast, requires conscious disregard of a perceived risk. TEX. PENAL CODE § 6.03(c).

4

The two offenses differ only in whether the actor was aware of the risk. *Melton*, 660 S.W.3d at 208.

Evidence that a gun was accidentally discharged does not, standing alone, raise criminally negligent homicide. *Id.* at 206. When the record shows that the defendant knew the firearm was loaded, was familiar with firearms and their potential for injury, and pointed the firearm at another person, that evidence indicates *awareness* of the risk, not a *failure to perceive* it. *Id.* A defendant is not entitled to a criminally negligent homicide instruction merely because he denies intending the death. *Id.*

Appellant's first account, that Cecilia shot herself, describes no offense at all and cannot support a lesser-included instruction. *Chavez*, 666 S.W.3d at 777. His second account confirms Appellant's awareness of the risk that the gun could be discharged. He owned the pistol and was familiar with its operation. He knew the magazine contained live rounds. He acknowledged that the chamber had been empty. Appellant said he believed he had racked the pistol to chamber a round before it fired. He held the pistol in his hand during a heated argument and moved it repeatedly in Cecilia's direction. And he acknowledged appreciating the risk of pointing a loaded firearm at another person. That Appellant claims he did not intend to pull the trigger, or did not intend the resulting death, is not affirmative evidence that he failed to perceive the risk his conduct created. *See Melton*, 660 S.W.3d at 206–07. Because no evidence raised criminally negligent homicide as a valid, rational alternative to murder, the trial court did not abuse its discretion in refusing the instruction.

Moreover, even assuming that evidence supported the submission of a criminally negligent homicide instruction, any error was harmless because the jury received, and

5

rejected, the intervening lesser-included offense of manslaughter. We reverse a trial court's error in failing to submit a lesser-included offense only if the omission caused "some harm," i.e., is "the presence of any harm, regardless of degree." *See Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *Saunders v. State*, 840 S.W.2d 390, 392 (Tex. Crim. App. 1992). The inquiry considers the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information in the record. *Almanza*, 686 S.W.2d at 171. The harm to the defendant must be actual, not merely theoretical. *Chambers*, 580 S.W.3d at 154.

The Texas Court of Criminal Appeals has recognized the harm inherent in omitting a proper lesser-included instruction: it forces the jury to choose between conviction on the greater offense and acquittal of a defendant it believes to be a wrongdoer. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995). When the jury is instead permitted to consider an intervening lesser-included offense and rejects it in favor of conviction for the greater, the rejection ordinarily demonstrates that the jury was not trapped in an all-or-nothing choice; omission of a still-lower offense is generally harmless. *Masterson v. State*, 155 S.W.3d 167, 171–72 (Tex. Crim. App. 2005).

*Masterson* is directly on point. There, the defendant was charged with capital murder and testified that he had killed the victim by applying a "sleeper hold" during consensual sexual conduct, without any intent to kill. *Id.* at 171. The trial court refused to submit criminally negligent homicide but did submit manslaughter. *Id.* The Court of Criminal Appeals unanimously held that any error in refusing the criminally negligent homicide instruction was harmless because, if the jury had believed the defendant's account that he did not intend to kill, it "could easily have given effect to that belief by

6

acquitting appellant of capital murder and convicting him of manslaughter." *Id.* at 172. That the jury declined to do so, the Court explained, "shows that it did not believe appellant's story." *Id.*

The same reasoning applies here. The charge authorized the jury to convict Appellant of murder, convict him of manslaughter, or acquit. Manslaughter required proof that Appellant recklessly caused Cecilia's death by conscious disregard of a perceived risk. TEX. PENAL CODE §§ 6.03(c), 19.04(a). It offered the jury a rational compromise if it believed Appellant caused Cecilia's death by unsafe handling of the pistol without intending her death. Had the jury credited Appellant's account that the pistol discharged accidentally while he jolted it in Cecilia's direction, it could easily have given effect to that belief by convicting him of manslaughter. The jury rejected that option. By convicting Appellant of murder, the jury necessarily found that he intentionally or knowingly caused Cecilia's death, not that his conduct merely created a risk of death. That finding is inconsistent with the mental state required for criminally negligent homicide.

Considering the entire charge, the evidence, the arguments, and the verdict, we hold that Appellant suffered no actual harm from the trial court's refusal to submit the requested instruction. We overrule Appellant's sole issue.

**CONCLUSION**

Having overruled Appellant's only issue, we affirm the trial court's judgment.

Lawrence M. Doss
Justice

Do not publish.